**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
  VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: October 19, 2020
Date Decided: November 19, 2020

Steven L. Caponi, Esquire
Matthew B. Goeller, Esquire
K&L Gates LLP
600 King Street, Suite 901
Wilmington, DE 19801

R. Judson Scaggs, Jr., Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

David E. Ross, Esquire
R. Garrett Rice, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Re:     *Manhattan Telecommunications Corp., d/b/a*
        *Metropolitan Telecommunications, a/k/a MetTel v.*
        *Granite Telecommunications, LLC*
        C.A. No. 2020-0468-JRS

Dear Counsel:

The plaintiff in this trade libel case, Manhattan Telecommunications Corp.

("MetTel"), has brought a Motion for Continued Confidential Treatment in which it

seeks a court order sealing all references in the pleadings to the allegedly defamatory

statements. For the reasons explained below, MetTel's motion must be denied and

the redacted portions of the pleadings must be made public.

## I.  FACTUAL BACKGROUND

MetTel and Granite Telecommunications, LLC ("Granite") provide a variety of communications solutions to Delaware entities.[1]  Both companies apparently provide services to an overlapping customer base, including those uniquely affected by the COVID-19 pandemic, such as healthcare providers.[2]  In its Complaint, MetTel alleges that shortly after the pandemic set in, Granite began contacting some of these overlapping customers to sow doubts about MetTel's financial condition and ability to weather the pandemic-related economic uncertainty.[3]

These contacts first came to light after MetTel was approached by confused customers who recounted Granite's statements.[4]  As time passed, MetTel came to learn that Granite's allegedly false and defamatory statements were not isolated, but

---

[1] Verified Compl. Under Seal ("Compl.") (D.I. 1) ¶¶ 6–7, 10–11.

[2] Compl. ¶¶ 4, 20.

[3] Compl. ¶¶ 16–17.

[4] Compl. ¶ 19.

widespread, and were coming from all levels within Granite's organization.[5]  As a result of these contacts, MetTel alleges substantial harm to its reputation and a decline in both current and future business.[6]

## II.  PROCEDURAL HISTORY

MetTel originally brought suit against Granite on May 19, 2020.[7]  On June 9, 2020, Granite removed the action to the United States District Court for the District of Delaware.  MetTel then voluntarily dismissed that action.[8]  MetTel initiated this action on June 15, 2020.[9]  The operative Complaint asserts claims for defamation, tortious interference with prospective economic advantage, tortious interference

---

[5] Compl. ¶¶ 19–20, 29.

[6] Compl. ¶ 36.

[7] Verified Compl., *Manhattan Telecomms. Corp. v. Granite Telecomms., LLC*, C.A. No. 2020-0380-JRS (D.I. 1).

[8] Notice of Filing of Notice of Removal, *Manhattan Telecomms. Corp. v. Granite Telecomms., LLC*, C.A. No. 2020-0380-JRS (D.I. 41); Mot. for Continued Confidential Treatment ("Mot.") (D.I. 14) ¶ 3.

[9] (D.I. 1).

with contractual relations, trade libel and deceptive trade practices.[10]  As factual

predicates for these claims, the Complaint lays out both general descriptions and

specific examples of statements made by Granite employees that MetTel claims are

defamatory, as well as the reasons MetTel believes the statements will or have

caused harm.[11]  The Complaint was filed under seal as permitted by Court of

Chancery Rule 5.1.

When MetTel filed the public version of the Complaint, the content related to

the alleged defamatory statements was redacted.[12]  MetTel filed its initial Motion for

Confidential Treatment on June 23, 2020.[13]  This motion sought an order allowing

MetTel to file its Motion to Expedite confidentially under Court of Chancery

Rule 5.1.[14]  This unopposed motion was granted on June 24, 2020.[15]  MetTel's

---

[10] Compl. ¶¶ 38–71.

[11] Compl. ¶¶ 17–37.

[12] Verified Compl. Redacted Public Version (D.I. 2).

[13] Pl.'s Mot. for Confidential Treatment (D.I. 4).

[14] *Id.* ¶ 7.

[15] Order Granting Mot. for Confidential Treatment (D.I. 5).

Motion to Expedite was filed on June 25,[16] with the redacted public version being filed on July 2, 2020.[17]

Prior to the filing of the public version of the Motion to Expedite, on June 29, 2020, Interested Party Professor Eugene Volokh submitted notice under Rule 5.1(f) challenging the confidential treatment of the Complaint, its exhibits and the Motion to Expedite.[18] In response, MetTel filed the present Motion for Continued Confidential Treatment on July 10, 2020 (the "Motion").[19] In his opposition to the Motion, Professor Volokh states that he wishes to use the currently redacted information, *inter alia*, to "publicly discuss, on his Reason Magazine-hosted blog and potentially in a law review article, how libel litigants are trying to use the legal system to restrict speech."[20]

---

[16] Pl.'s Mot. to Expedite Under Seal (D.I. 6).

[17] Pl.'s Mot. to Expedite (D.I. 11).

[18] Notice of Challenge to Confidential Treatment (D.I. 10).

[19] (D.I. 14).

[20] Opp'n to Mot. for Continued Confidential Treatment ("Opp'n") (D.I. 16) ¶ 15.

MetTel makes three primary arguments for continued confidential treatment. *First*, it argues that the presumption of public access is overcome because public access to the allegedly defamatory statements would cause irreparable harm, as recognized by this court in *CapStack Nashville 3 LLC v. MACC Venture Partners* ("*CapStack*").[21]  *Second*, it argues that Professor Volokh's interest in this information is not "compelling enough" to outweigh the potential harm.[22]  *Third*, it argues that the previous findings of good cause for confidentiality in this case dictate the same finding here.[23]

Professor Volokh counters that MetTel has failed to rebut the presumption of public access for a multitude of reasons.  He principally argues that he possesses a legitimate interest in the redacted information, while MetTel lacks any justifiable

---

[21] Mot.  ¶¶ 11–17 (citing *CapStack Nashville 3 LLC v. MACC Venture Partners*, 2018 WL 3949274 (Del. Ch. Aug. 16, 2018)).

[22] Mot. ¶¶ 18–23; Reply in Supp. of Pl.'s Mot. for Continued Confidential Treatment ("RB") (D.I. 21) ¶¶ 8–14.

[23] Mot. ¶¶ 24–25; RB ¶¶ 15–16.

interest in confidentiality.[24]  He further argues MetTel's filing of an unredacted

Motion to Remand in Federal Court undermines its arguments in this Action,[25] and

the public interest here is heightened because MetTel should be deemed to be a

public person.[26]

I am persuaded that the public interest in the redacted information at issue

outweighs the potential for harm to MetTel flowing from disclosure.  The Motion,

therefore, is denied.

## III.  ANALYSIS

Court of Chancery Rule 5.1 governs this Motion for Continued Confidential

Treatment.  That rule, in essence, codifies the "powerful presumption of public

---

[24] Opp'n ¶¶ 15–17, 18–22.

[25] Opp'n ¶¶ 23–24.  According to MetTel, this disclosure was inadvertent and "[t]he District Court has since placed the Opening Brief in Support of Motion to Remand under seal." RB ¶ 12.

[26] Opp'n ¶ 25.  Given a sufficient showing that the public's interest in understanding the proceedings outweighs MetTel's interest in confidentiality, I need not decide whether MetTel is a "public person."

access" to court proceedings and records.[27]  The rule also recognizes, however, that

the presumption of public access is not absolute, and that, in certain circumstances,

litigants are entitled to confidentiality.  The touchstone for the exception to access is

"good cause."[28]  Good cause exists if the party seeking confidential treatment can

demonstrate that "the public interest in access to Court proceedings is outweighed

by the harm that public disclosure of sensitive, non-public information would

cause."[29]

By design, the burden of demonstrating good cause is exacting, recognizing

that "[t]hose who decide to litigate in a public forum . . . must do so in a manner

consistent with the right of the public to follow and monitor the proceedings and the

result of [the] dispute."[30]  In this regard, our courts appreciate that public access to

---

[27] *Horres v. Chick-fil-A, Inc.*, 2013 WL 1223605, at *2 (Del. Ch. Mar. 27, 2013).

[28] Ct. Ch. R. 5.1.

[29] *Id.*

[30] *Al Jazeera America, LLC v. AT&T Servs., Inc.*, 2013 WL 5614284, at *7 (Del. Ch. Oct. 14, 2013).  Notably, the previous rule, Rule 5(g), was revised "in part because too much information was being deemed confidential, including information which 'did not

the courts and their business is "fundamental to a democratic state and necessary in the long run so that the public can judge the product of the courts in a given case."[31] And the public cannot "judge the product of the courts in a given case" if the information being withheld is necessary for understanding "the nature of the dispute" or the court's bases for a decision.[32]

The burden for overcoming the presumption of public access always falls on the party seeking to "obtain or *maintain* Confidential Treatment."[33] And that party must show more than mere "potential for collateral economic consequences."[34]

---

fall within any recognized exception to the public's right of access and was not truly sensitive or confidential in nature.'" *Id*. at *3 (internal citation omitted).

[31] *Sequoia Presidential Yacht Gp. LLC v. FE P'rs LLC*, 2013 WL 3724946, at *2 (Del. Ch. July 15, 2013) (footnote and internal quotations omitted).

[32] *Al Jazeera America, LLC*, 2013 WL 5614284, at *1 (observing that "[t]he public interest in the judicial process cannot be vindicated if the nature of the litigation remains masked in a fundamental way").

[33] Ct. Ch. R. 5.1(b)(3) (emphasis added).

[34] *Al Jazeera*, 2013 WL 5614284, at *5.

"Instead, the harm must be 'particularized.'"[35]  In other words, "[t]he conclusory assertion that a company faces an unsubstantiated risk of 'economic disadvantage'" is not enough.[36]  Nor is potential embarrassment or the fact that the information has not previously been disclosed.[37]

Applying this balancing framework here, MetTel has failed to prove a particularized harm sufficient to outweigh the public's interest in the redacted information.  First, the harm MetTel asserts will occur if the redacted information is made public is not sufficiently particularized.  Second, without the currently redacted portions of the Complaint, the public's ability to understand the proceedings is seriously diminished.  Finally, MetTel's argument that *CapStack* is dispositive is unconvincing.

---

[35] *In re Columbia Pipeline Gp., Inc.*, 2018 WL 4182207, at *2 (Del. Ch. Aug. 30, 2018) (quoting *Sequoia*, 2013 WL 3724946, at *2).

[36] *ADT Hldgs., Inc. v. Harris*, 2017 WL 4317245, at *3 (Del. Ch. Sept. 28, 2017) (quoting *Al Jazeera*, 2013 WL 5614284, at *3).

[37] *Sequoia*, 2013 WL 3724946, at *2.  Because MetTel bears the burden to prove good cause, and the fact that information is currently undisclosed is not sufficient, MetTel's arguments that past findings of good cause on uncontested motions must lead to the same conclusion here fall short.  Mot. ¶ 25.

### A. MetTel's Interest in Confidentiality

The harm MetTel alleges will be inflicted upon it in the absence of confidentiality protections is too broad to meet the requirements of Rule 5.1. As explained above, to show an interest in confidentiality that outweighs the public's right of access, MetTel must do more than make "[g]eneric statements of harm."[38] The showing must be particularized; in other words, MetTel "must point to specific information like 'trade secrets or competitively sensitive pricing information'" that is not in the public mix and, if disclosed, will cause clearly identified harm.[39]

MetTel claims to meet this burden by alleging "harm beyond its reputation, including but not limited to direct harm to its business relationships with current and potential customers."[40] But MetTel's Complaint and Motion rest on unsubstantiated

---

[38] *In re Oxbow Carbon LLC*, 2016 WL 7323443, at *2 (Del. Ch. Dec. 15, 2016) (Order).

[39] *Id.* (quoting *Kronenberg v. Katz*, 872 A.2d 568, 608–09 (Del. Ch. 2004)).

[40] Mot. ¶ 17.

claims of generic harm.[41] For example, MetTel's Complaint alleges: "[o]nce that seed [of the defamatory statement] has been planted, the client will undertake a critical look at a provider with which it had been perfectly happy" and "may terminate the contract based on a pretext"[42]; "there is a real risk that MetTel will be asked to bid on fewer and fewer contracts going forward"[43]; and "[o]nce confidence [in] a provider's financial stability is called into question, customers . . . can simply choose the non-confrontational option of selecting a different vendor."[44]

The examples of potential harm MetTel offers in support of the Motion are even less concrete. MetTel asserts that "[i]f this Court were to discontinue the confidential treatment of the pleadings that contain Granite's defamatory statements, it would effectively thwart MetTel's efforts to prevent further irreparable harm."[45]

---

[41] It is important to emphasize here that the extent to which MetTel is required to plead harm to meet its minimal notice pleading burden under Court of Chancery Rule 8 differs from the more rigorous burden to demonstrate harm under Rule 5.1.

[42] Compl. ¶ 31.

[43] Compl. ¶ 32.

[44] Compl. ¶ 33.

[45] Mot. ¶ 15.

These potential harms fail to meet the stringent particularization standard. In fact, it is difficult to imagine a defamation case, at least in a commercial setting, where these same concerns would not *always* be present. MetTel tries to avoid this reality by claiming its harm is unique because disclosure "would effectively nullify MetTel's efforts to prove it was and is being harmed."[46] Not so. If Granite had made these statements in a public setting, MetTel would still be able to sue for defamation just the same.[47] While the nature of the harm may differ depending on if a defamatory statement is made in private or public, a defamation or libel suit would still be viable in either context.[48]

Stepping back from MetTel's arguments, it is evident from a comparison to the examples in Rule 5.1 that potentially defamatory statements, *per se*, are not the kind of information the drafters of Rule 5.1 intended to protect. The five examples in Rule 5.1 include: "trade secrets; sensitive proprietary information; sensitive

---

[46] RB ¶ 6.

[47] *See, e.g.*, *Spence v. Funk*, 396 A.2d 967, 972–73 (Del. 1978) (finding a quote in a publicly available magazine article was libelous).

[48] *Id.*

financial, business, or personnel information; sensitive personal information such as medical records; and personally identifying information such as social security numbers, financial account numbers, and the names of minor children."[49] Each of these enumerated categories is discrete and reflects information that is not, or at least should not be, of interest to the general public in the quest to understand the dispute before the court or the bases for the court's decisions.[50] While I do not dispute there is some risk of economic harm to MetTel if the redacted information is made public, allowing such information to remain redacted "merely because its disclosure *could* cause the parties economic harm" would turn the presumption of public access on its head and frustrate the purpose of Rule 5.1.[51]

---

[49] Ct. Ch. R. 5.1(b)(2).

[50] *See Al Jazeera*, 2013 WL 5614284, at *1 ("They note that this Court traditionally has allowed redaction of discrete sensitive information, such as a price term . . . . That is because, on balance, the detriment to the parties of disclosure outweighs the public interest in such a discrete piece of information.").

[51] *Id*. at *5 (emphasis added).

### B. The Public's Interest in Understanding the Bases of the Dispute

The public maintains a strong interest in access to the content of the alleged defamatory statements. If the information currently redacted remains so, the public will have no means to understand the dispute MetTel has asked the Court to adjudicate. This conflicts with the public's right to "monitor the proceedings and result[s]"[52]—a right, again, that "has been characterized as fundamental to a democratic state."[53] In other words, when "the supposedly-confidential information represents the nature of the dispute itself—the interest of the public in accessing this information outweighs the economic harm to the parties that disclosure may cause."[54] That is the case here.

While MetTel and Professor Volokh debate the legitimacy of Professor Volokh's planned use for this information,[55] nothing in our law obligates *Professor*

---

[52] *Id.* at *7.

[53] *Horres*, 2013 WL 1223605, at *1 (quoting *Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984)).

[54] *Al Jazeera*, 2013 WL 5614284, at *5.

[55] Mot. ¶¶ 18–23; Opp'n ¶¶ 15–17.

*Volokh* to prove why he seeks access to information filed in a Delaware court, much less that his purpose is somehow "proper." Instead, *MetTel* is obligated to prove that good cause exists to deny Professor Volokh access to the information he seeks as a member of the public.[56] That information—the gravamen of the case—cannot be discerned from the redacted Complaint, which, at best, notifies the public that Granite made some unknown defamatory statements that MetTel now asserts are defamatory for some unknown reason(s).[57] This is hardly adequate to enable the public "to follow and monitor the proceedings and the result of [the] dispute."[58]

---

[56] Ct. Ch. R. 5.1(b)(3) ("The party or person seeking to obtain or maintain Confidential Treatment always bears the burden of establishing good cause for Confidential Treatment.").

[57] For example, the interested reader of Paragraph 17 of the Complaint would read: "Granite has begun telling MetTel's current and potential clients—falsely ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The purpose of these lies is to convince MetTel's clients and potential clients that MetTel is ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Compl. ¶ 17.

[58] *Al Jazeera America, LLC*, 2013 WL 5614284, at *7. *See also Okla. Firefighters Pension Ret. Sys. v. Corbat*, 2017 WL 5484125, at *2 (Del. Ch. Nov. 15, 2017) (holding that, although the complaint revealed that the case "involve[d] communications between Citigroup's management and its Board of Directors concerning its compliance with law and with regulatory consent orders," redactions regarding the specific communications

Not only would it be impossible for a member of the public to understand what is going on in this case based on the pleadings, "it is difficult to envision a judicial opinion in this matter that could maintain the confidentiality of all the designated material and yet be comprehensible to the reading public."[59] In its Complaint, MetTel asks this Court to determine whether Granite committed defamation, tortious interference with prospective economic advantage, tortious interference with contractual relations, trade libel and deceptive trade practices.[60] When this Court is called upon to determine the merits of these claims in trial or motion practice, the Court will not be able to render and deliver a comprehensible decision without reference to the currently redacted information.

---

were not proper since "[t]he public . . . has a strong interest in the workings of a Delaware entity and its compliance with substantive law").

[59] *Al Jazeera*, 2013 WL 5614284, at *1.

[60] Compl. ¶¶ 38–71.

### C. MetTel's Reliance on *CapStack* is Misplaced

Finally, MetTel claims that this court's decision in *CapStack* is dispositive.[61]

Indeed, according to MetTel, *CapStack* is the reason it filed its pleadings under seal

in the first place.[62]  Under MetTel's reading of *CapStack*, MetTel "cannot, on the

one hand, argue that the defamatory and tortious statements by Granite are causing

irreparable harm, while, at the same time, repeat those defamatory and tortious

statements in the public record."[63]  As explained below, that reading of *CapStack* in

the context of this Motion, is neither accurate nor persuasive.

In *CapStack*, shortly after the parties entered into an arrangement to own and

manage three rental properties, the relationship fell apart.[64]  Both the plaintiffs and

defendants accused the other of misrepresenting the extent of their previous

---

[61] 2018 WL 3949274.

[62] Mot. ¶ 2.

[63] RB ¶ 6.

[64] *CapStack Nashville 3 LLC*, 2018 WL 3949274, at *2.

experience in the industry.[65]  After the plaintiffs received a letter they read as a threat

to spread the alleged misrepresentations, they filed suit.[66]  The plaintiffs then moved

for a temporary restraining order, "ask[ing] this Court to temporarily enjoin the

Defendants from making allegedly defamatory statements about the Plaintiffs to the

SEC, investors in CSP, or any other third parties."[67]  "In other words, the Plaintiffs

[sought] a prior restraint" on speech, which is prohibited by the Delaware

Constitution.[68]

While it is true that *CapStack* held that the plaintiffs had "failed to establish

that irreparable harm will likely result," relying in part on the fact that the

information was already public through the pleadings, the court reached this

conclusion when answering an entirely different question than the one I answer

---

[65] *Id.*

[66] *Id.* at *2–3.

[67] *Id.* at *3.

[68] *Id.* at *3–4.

here.[69] The court in *CapStack* was being asked "to temporarily enjoin future speech based solely on a finding that the Complaint pleads a *colorable claim* for defamation or trade libel."[70] The court analyzed the defamation claims solely in the context of deciding whether a TRO was justified.[71]

Here, I must answer a single question: whether MetTel has demonstrated a particularized harm that outweighs the public interest in access to court proceedings and records. I am not considering whether a temporary injunction should issue, but rather whether redacted information should be made public. And because the allegedly defamatory statements have already been made and documented, I face no risk of inadvertently "forbidding [a party] from engaging in constitutionally protected speech."[72]

---

[69] *Id*. at *3.

[70] *Id*. at *4 (emphasis in original).

[71] *Id*. at *3 (internal citation omitted).

[72] *Id*. at *5. The fact that the statements have already been made likely explains why MetTel has not sought emergency injunctive relief.

Further, even ignoring these significant differences in procedural posture and requested relief, MetTel's *CapStack* argument fails for another equally salient reason. Under MetTel's reading of *CapStack*, the factual gravamen of a defamation complaint could *never* be disclosed to the public in a court document if that information was not previously disclosed, regardless of whether access to the particular statements would cause particularized harm, because disclosure would potentially foreclose a showing of irreparable harm.[73] That reading would eviscerate the presumption of public access, ignore our Rule 5.1 jurisprudence requiring a showing of good cause to rebut the presumption, and conflict with the general rule that the mere fact information is "previously undisclosed" is not enough to justify confidential treatment.[74] *CapStack* has no bearing here.

---

[73] RB ¶ 5.

[74] *Sequoia*, 2013 WL 3724946, at *2.

## IV.  CONCLUSION

Because MetTel has failed to carry its burden of proving good cause under

Rule 5.1, MetTel's Motion for Continued Confidential Treatment must be DENIED.

The pleadings at issue will be unsealed.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*